UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:22-CR-00301 |
| | ) | |
| | ) | JUDGE TRAUGER |
| ALAN HASSLER | ) | |
| BRIAN HASSLER | ) | |
| MICHAEL HASSLER | ) | |

**SENTENCING MEMORANDUM ON BEHALF OF THE UNITED STATES**

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney, Robert E. McGuire, and submits this sentencing memorandum on behalf of the United States in this case.[1]

The Defendants pleaded guilty pursuant to plea agreements. (Doc. No. 23, 25, 27.) Based on those plea agreements, the United States submits that a sentence that includes a term of 3 months of home confinement followed by two years of supervised release, is appropriate and sufficient but not greater than necessary to achieve the ends of justice for these Defendants.

The United States has reviewed the revised Pre-sentence Report and concurs with the Guideline calculation contained therein. In recommending that this Court accept the parties' plea agreement, the United States focuses on § 3553(a)(2) subparts (A) through (C):

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

---

[1] The United States will file copies of this memorandum under each defendant's case number. But since the defendants are brothers, the criminal activity was jointly undertaken, and the sentencing recommendation is the same for all three defendants, the United States is submitting only one sentencing memorandum that details the sentencing reasoning as to all three defendants.

  (B) to afford adequate deterrence to criminal conduct;

  (C) to protect the public from further crimes of the defendant

  The United States submits that, as described in the PSR, all of three of the Defendants made the fateful decision to lie to investigating federal authorities and fabricate documents to support those lies. (PSR, ¶ 5-10). As a result, 144 firearms that the Defendants sold to individuals are unaccounted for and remain unaccounted for. They were most likely sold to non-prohibited individuals (who, most likely, still have them) but there is no record to verify that sale. The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) investigated the Defendants' family owned business, Franklin Gun Shop, after a 2016 compliance inspection showed numerous record-keeping violations. (PSR, ¶ 6.) In March of 2020 a follow up inspection was done which determined that hundreds of firearms were unaccounted for in Franklin Gun Shop's internal records. *Id*. Therefore, in April 2021, the ATF moved to revoke Franklin Gun Shop's business license. (PSR, ¶ 7.) The Defendants were later able to find paperwork for all but 144 firearms by July of 2021. (PSR, ¶ 8.) The ATF had determined that several of the missing firearms had turned up in unrelated investigations and two had been reported stolen by their lawful owners after leaving Franklin Gun Shop's custody. *Id*.

  At that point, the Defendants made a truly terrible decision for themselves. Instead of confessing that that did not appropriately fill out the federally regulated paperwork for these 144 firearms (or lost them after they were filled out) and take whatever consequences to their licensure that may have had, the Defendants agreed with each other to commit a federal crime. They fabricated and produced records for the 144 firearms that attempted to show the firearms had been sold legally with the proper paperwork kept. (PSR, ¶ 9.) The crux of the forgery was this: the Defendants added one (or more) of the firearms with missing paperwork to previously completed

2

Case 3:22-cr-00301   Document 47   Filed 05/17/23   Page 2 of 8 PageID #: 165

Form 4473s pertaining to the legitimate purchase of other firearms by other customers. Their ruse quickly fell apart, however, as ATF agents contacted the individuals on the Form 4473's that the Defendants produced to support their lies. Individual customers who had completed the original 4473s as part of the purchasing process had also retained their original sales receipts showing the firearms they had *actually* purchased. The receipts showed not only which firearms they had purchased from Franklin Gun Shop but also which firearms they had *not* purchased. (PSR, ¶ 10.) When ATF compared the original sales receipts to the fabricated Form 4473s it was easy to see that the "missing" guns had been added to that original paperwork after the fact. ATF also interviewed individuals who, while they did not have their original receipts, denied having purchased the firearms ascribed to them by the Defendants in the 4473s they provided to ATF. *Id*.

The United States can report to the Court that no evidence was ever uncovered that the Defendants knowingly sold a firearm to a prohibited person. As described in the PSR, several of the firearms were recovered in ATF investigations unrelated to Franklin Gun Shop but none indicated any criminal activity on the part of Franklin Gun Shop. For example, two of the firearms on the "missing" list were involved in a previous ATF investigation into another Federal Firearms Licensee in 2001 but were later released to Defendant Bryan Hassler on consignment in 2006. In other words, the ATF investigation pre-dated the Defendants even having the firearm. Of the two firearms that were reported stolen (one in 2019 and one in 2015) they were reported stolen by their lawful owners. Essentially, Franklin Gun Shop sold the firearms to the lawful owners but did not complete paperwork on them appropriately; the firearms were later stolen from those owners (one was later recovered, one was not). In short, even the firearms that were connected to other investigations indicated no criminal activity on the part of the Defendants apart from their later

3

fraudulent creation of a new Form 4473. None of the firearms that were on the "missing" list have been used in other crimes, much less other violent crimes.

Nor was evidence uncovered that the Defendants failed to fill out the Form 4473 paperwork to somehow hide a straw purchase. Unlike other firearm trafficking investigations, the Defendants did not attempt to avoid federal regulations for the express and specific purpose of putting firearms in the hands of those who couldn't otherwise legally possess them. The 144 missing firearms were not, for instance, sold to a terrorist organization or criminal gang members, nor was the Defendants' cover up designed to hide more serious wrongdoing (such illicitly as supplying firearms to individuals who would use them to commit crimes of violence). The United States presumes, based on the sum total of the investigation, that the firearms were sold to those lawfully eligible to purchase the firearms and, further, that the firearms are likely still being lawfully possessed by those purchasers (albeit they are more than likely unaware that the required paperwork as part of their firearm purchase was not completed or was lost). In short, the Defendant's committed a federal crime to cover their own negligence in following federal regulations.

This case puts the truth to the adage: "It's not the crime, it's the cover up." Though in this case, the cover up *was* the crime. All of the Defendants have been law abiding citizens for virtually their entire lives. Two of them earned college degrees. None has any criminal history whatsoever before this case. Congress has decided that individuals who sell firearms to the public merit sufficient regulation such that the public can be confident that a person who purchases a firearm from a Federal Firearms Licensee is legally able to do so. The public depends on these systems and it is right to enforce the law against those who would, by their actions, undermine that system. For what was likely simple negligence, the Defendants had failed to keep sufficient records of their

4

firearms transactions. This failure is problematic in and of itself but would carry no criminal liability, only a regulatory consequence (the suspension or loss of licensure). Yet when faced with regulatory consequences of these failures, the Defendants, in perhaps a desperate attempt to keep their family business open, exercised extremely poor judgment and hoped they wouldn't get caught. Certainly, if they had been honest about these failures, losing their license would be a potential consequence. However, once their scheme was uncovered the loss of licensure became all but a foregone conclusion, their store would ultimately be closed, and they then faced felony charges and potential jail time. A miserably poor decision to say the least.

However, shortly after the ATF served a search warrant at Franklin Gun Shop in December of 2021, the Defendants came to their senses, hired counsel, and began the process of taking responsibility for their actions. The United States conducted proffer sessions with each Defendant during which they freely admitted their wrongdoing. The Defendants agreed to waive their rights to grand jury review of the facts of the case and agreed to be charged via Information. (Doc. No. 1.) The Defendants then moved to change their plea to guilty within a few weeks of being charged. None of the Defendants made any legal challenge to the charges or the evidence against them. Their swift acceptance of responsibility matters under the § 3553(a) factors.

Further, it is relevant that the Court balance this terrible decision against the Defendants' lifelong history of normal citizenship. Unlike many defendants this Court sees, these Defendants have no criminal history whatsoever. The fact that all of the Defendants are in their late forties or early fifties shows that they are old enough to know better but also establishes that the vast majority of their lives have been spent in respect for the law. It warrants considering that this crime was committed against the backdrop of a fairly unusual setting: a federal regulatory investigation into their family business. Given that the business is now closed, that circumstance seems exceptionally

5

unlikely to develop a second time. It is also, based on their personal histories, nearly impossible to conceive of a scenario where the Defendants would recidivate or commit another crime. The United States submits that, based on their personal histories, it is more than reasonable to believe that the Defendants will *never* commit another offense again.

Moreover, the Defendant's fraudulent activity, while most certainly being an offense against the United States, did not significantly impact the general public in that no Franklin Gun Shop customer lost money or suffered an adverse financial or personal consequence from the Defendant's actions. There is no question that it is righteous to hold individuals who would lie to federal investigators and submit forged documents accountable for their actions. To that end the Defendants have entered guilty pleas and, therefore, are being held accountable. The lack of wider community impact is a factor that this Court will appropriately consider at sentencing.

The United States has recommended a particular punishment in the plea agreement. Indeed, the Defendants deserve sanction for lying to investigators, fabricating documents, and intending to deceive federal investigators. Such conduct cannot be condoned, especially in the important area of firearm regulation. Given that the Defendants are financially able to pay a fine, the United States expects that this Court will fine them. However, it is worth noting that they have also suffered significant extra-judicial punishment that is appropriately considered under the § 3553(a) factors. First, the Defendants have lost the very family business they tried to save. A family business first started by their father – and essentially bequeathed to his sons as legacy – is shuttered forever. The Franklin Gun Shop's license was revoked in May of 2022. (PSR, ¶ 11). Given the history in this case, none of the Defendants will every be able to open a similar business in the future. Since all three Defendants worked at the store, they have also all lost their livelihoods and, to the extent that they need to continue to work, they must find other employment. The Defendants,

6

Case 3:22-cr-00301 Document 47 Filed 05/17/23 Page 6 of 8 PageID #: 169

despite having no prior criminal history, are now convicted felons. Given that all three Defendants are gun enthusiasts enough that they made firearms dealing their lives' work, they are now no longer able to legally possess a firearm ever again. Finally, unlike most cases that come to federal court, the federal enforcement activity in this case merited media attention.[2] Therefore, there was public opprobrium in that the names of all three Defendants and a summary of their crimes were published in the community for all of their friends, family, business associates, and acquaintances to see.

Because of all of the above factors, the Defendants' total lack of criminal history, their full acceptance of responsibility, the lack of any civilian victim, and the extra-judicial punishment they have received, the United States submits that a sentence of 3 months home confinement followed by 2 years of supervised release is sufficient but not greater than necessary to achieve the ends of punishment.

Respectfully submitted,

MARK H. WILDASIN
United States Attorney

By:    */s/ Robert E. McGuire*
      ROBERT E. MCGUIRE
      Assistant U.S. Attorney
      719 Church Street, Suite 3300
      Nashville, Tennessee 37203
      Phone: (615) 401-6610
      robert.mcguire@usdoj.gov

---

[2] *See e.g.* THE TENNESSEAN, Nov. 23, 2022 : www.tennessean.com/story/news/crime/2022/11/23/franklin-gun-shop-owners-plead-guilty-over-missing-weapons-false-records/69671186007 last accessed May 17, 2023.

CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing will be served electronically to counsel for defendant via CM/ECF on the 17th day of May, 2023.

                                              */s/ Robert E. McGuire*
                                              ROBERT E. MCGUIRE

8

Case 3:22-cr-00301   Document 47   Filed 05/17/23   Page 8 of 8 PageID #: 171